## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-20290-KMM

ALICE THERESA DYE,

      Plaintiff,

v.

ANDREW SAUL, Commissioner of
Social Security Administration,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## CROSS MOTIONS FOR SUMMRY JUDGMENT[1]

      This matter is before the Court on the parties' Cross Motions for Summary Judgment.
Plaintiff Alice Theresa Dye ("Plaintiff" or "Dye") filed her Motion for Summary Judgment on July
8, 2020 ("Plaintiff's Motion").  ECF No. [18].  Defendant, the Commissioner of Social Security
("Defendant" or "Commissioner"), filed his Motion for Summary Judgment with Supporting
Memorandum of Law on August 6, 2020 ("Defendant's Motion") arguing that the correct legal
standard was applied.  ECF Nos. [19], [20].[2]  Plaintiff filed a Reply to Defendant's Motion
("Reply") on August 9, 2020.  ECF No. [21].  The Court must now determine whether the decision
reached by the Administrative Law Judge ("ALJ") is supported by substantial evidence and
whether the correct legal standards were applied.  After a review of the Motions, the record, and

---

[1] On January 22, 2020, this matter was referred to the undersigned for all pre-trial, non-dispositive
matters, and for a Report and Recommendation on any dispositive matters.  ECF No. [2].

[2] Although the Docket reflects that Defendant filed a separate Response to Plaintiff's Motion for
Summary Judgment, ECF No. [20], it is the same document as Defendant's Motion, ECF No. [19].

all relevant authorities, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion be **DENIED**, and Defendant's Motion be **GRANTED**.

## I.    BACKGROUND

On March 11, 2016, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and filed a Title XVI application for supplemental security income. R. at 221–22, 307–16.[3]  Plaintiff filed both applications, alleging disability on March 3, 2016.  *Id.* at 225, 311.  Plaintiff was born on April 25, 1958, and was fifty-seven years old at the time her application was filed.  *Id*. at 225.  The Social Security Administration ("SSA") initially denied Plaintiff's claims on June 28, 2016, and denied them again upon reconsideration on September 27, 2016.  *Id*. at 221–24.  Thereafter, Plaintiff requested a hearing which was held on July 19, 2018, in Miami, Florida.  *Id*. at 162, 255.  Plaintiff agreed to proceed with the hearing unrepresented by counsel.  *Id.* at 163–64.  A vocational expert, Ms. Mancini ("Mancini" or the "VE"), also testified at the hearing.  *Id.* at 190.

On October 31, 2018, the ALJ denied Plaintiff's application.  *Id*. at 152.  Thereafter, Plaintiff submitted additional evidence to the Appeals Council, including medical records from July 2018 through April 2019, *id.* at 76–102, 109–22, 1004–10, and requested review of the ALJ's decision, *id.* at 305.  On September 7, 2019, Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on the grounds that the additional evidence submitted by Plaintiff either did not show a reasonable probability that it would change the outcome of the ALJ's decision, or was dated after the ALJ's decision and, therefore, did not relate to Plaintiff's period

---

[3] References herein to "R. at __" are to the Social Security transcript, the pertinent parts of which can be found at ECF No. [10].  All the page numbers to transcript referenced herein refer to those assigned by the Court's electronic docketing system as found on the top right corner of the page.

of disability.  *Id.* at 6–7.  Having exhausted all available administrative remedies, and pursuant to 42 U.S.C. § 405(g), Plaintiff filed the instant action.  ECF No. [1].

### A. The SSA Hearing

At the onset of the hearing, the ALJ informed Plaintiff that she had the right to be represented by an attorney at the hearing.  R. at 163.  The ALJ explained the benefits of having an attorney present.  *Id.*  Nevertheless, Plaintiff agreed to proceed without an attorney and signed a form indicating her waiver of representation.  *Id.* at 163–64.  Thereafter, the ALJ explained the process by which a claimant is considered disabled.  *Id.* at 165.  Specifically, the ALJ informed Plaintiff that for a claimant to be found disabled, such claimant must have an impairment or combination of impairments that can be expected to last for a continuous period of at least twelve months or be expected to result in death.  *Id.*  The ALJ explained that the impairment must be severe enough to prevent the claimant from performing any type of substantial gainful activity during the claimant's alleged period of disability.  *Id.*  The ALJ also explained to her how the hearing would be conducted and that it is a formal proceeding whereby Plaintiff's testimony is under oath and with penalty of perjury.  *Id.* at 166.  The ALJ also explained the manner in which the questioning portion of the hearing would take place.  *Id.* at 167.  The ALJ informed Plaintiff that the ALJ will be asking Plaintiff questions about her condition, and that there will be a vocational expert, Ms. Mancini, who will then give the ALJ information about jobs available in the national economy.  *Id.*  The ALJ also informed Plaintiff that if she had any questions, she could address them with the ALJ or the VE.  *Id.* at 167, 197.  Thereafter, Plaintiff was duly sworn and the ALJ proceeded to question Plaintiff.  *Id.* at 168.

Plaintiff testified that she was sixty years old, approximately five-and-a-half feet tall and weighed 354 pounds.  *Id.*  She graduated high school and finished two and a half years of college

but did not get a college degree. *Id.* at 170. With respect to Plaintiff's past work, Plaintiff testified that she worked as a Compliance Specialist for YMP Real Estate Management from 2013 to 2015. *Id.* at 171–72. Prior to that position, Plaintiff testified that she worked for a company called Cornerstone. *Id.* at 174. Plaintiff stated that she held two different positions with that company, property manager for about one year, and assistant manager. *Id.* at 174–76.

The ALJ then proceeded to question Plaintiff about why she cannot work. *Id.* at 176. Plaintiff testified that she can no longer work because she cannot lift anything. *Id.* Plaintiff testified that the last time she lifted "chicken leg quarters" at the grocery store, she felt cramps in her stomach. *Id.* at 176–77. After seeing a doctor for a routine pap smear, Plaintiff testified that the doctor "popped" something inside of her. *Id.* at 177–78. Plaintiff testified that another doctor informed her that her uterus was bleeding and that she would need a hysterectomy if the bleeding continued. *Id.* at 179.

The ALJ then proceeded to question Plaintiff about her other medical conditions that were documented in her medical records. *Id.* at 180. The ALJ mentioned Plaintiff's rheumatoid arthritis diagnosis from Jackson Hospital. *Id.* Plaintiff testified that she was initially taking Naproxen and Ibuprofen for her rheumatoid arthritis, but her doctor insisted that she only take on or the other. *Id.* Plaintiff stated that she chose to continue taking Ibuprofen. *Id.* The ALJ also mentioned Plaintiff's high-blood pressure. *Id.* Plaintiff testified that she takes several medications, including Metoprolol for her high-blood pressure, Cyclobenzaprine as a muscle relaxer, and Tramadol for severe pain. *Id.* at 180–81.. Plaintiff testified that she does not take Tramadol every day, but that she "sometimes" takes the medication at night because the "pain keep[s] [her] up . . . ." *Id.* at 181.

Next, The ALJ questioned Plaintiff about her experience with physical therapy. *Id.* at 181. Plaintiff testified that physical therapy was "not right" for her and her body. *Id.* at 182. The ALJ

also questioned Plaintiff about the use of her walker and her cane. *Id.* at 183. Plaintiff testified that she used a cane until the doctor, who she went to see for the pap smear, "messed [her] up." *Id.* Plaintiff testified that she was not prescribed the walker or the cane. *Id.*

As to Plaintiff's abilities, she testified she can sit for about three to four hours, but that she cannot stand for very long. *Id.* at 185. Plaintiff also testified that she can walk approximately one block with the assistance of her walker before she must use her walker as a chair to rest. *Id.* at 186. Plaintiff also testified that although she would be able to lift a gallon of milk she might have "repercussions" afterwards. *Id.* at 187. Plaintiff testified that she cooks, can clean a small number of dishes at one time, and can assist with laundry by putting the clothes inside the washer. *Id.* at 187–88. Plaintiff also testified that she can go grocery shopping, so long as the store has a cart that she can ride on. *Id.* at 188. With respect to social activities, Plaintiff testified that she goes to church "every once in a while" and she loves to listen to disco music. *Id.* at 188–89.

At the hearing, the VE categorized Plaintiff's past work, using the Dictionary of Occupational Titles ("DOT") as: (1) a compliance manager, described in DOT 186.117-090, usually performed at a "sedentary" exertion level, with a Specific Vocational Preparation ("SVP") rating of eight, although the VE stated Plaintiff performed this job at a "medium" exertion level, with a SVP rating of five; (2) a property manager, described in DOT 186.167-046, usually performed at a "light" exertion level, with a SVP rating of eight, although the VE stated that Plaintiff performed this job at a SVP rating of five; and (3) an assistant manager, described in DOT 189.167-018, usually performed at a "light" exertion level, with a SVP rating of six, although the VE stated that Plaintiff performed this job with a SVP rating of five. *Id.* at 191–92.

The ALJ then asked the VE to consider a hypothetical individual with Plaintiff's age and education. *Id.* at 192. The ALJ further described this hypothetical individual as one who could

5

perform the full range of sedentary work; can occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; can never kneel or crawl; can occasionally crouch; could frequently balance; could occasionally utilize foot controls with the right foot; and should not be exposed to hazardous machinery or mechanical parts, unprotected heights, extreme cold or heat, vibration, wetness, or humidity. *Id.* The ALJ asked the VE whether this individual would be able to perform Plaintiff's past work. *Id.* The VE answered affirmatively, stating that such individual would be able to perform the position of compliance manager, although not as Plaintiff performed it. *Id.*

The ALJ then asked the VE whether Plaintiff would have any skills that would transfer from her past work to other sedentary positions. *Id.* at 193. The VE stated that Plaintiff's basic office skills would transfer to other sedentary positions such as: (1) a receptionist, DOT 237.367-038, with a SVP of four; (2) a telephone representative, DOT 299.357-014, with a SVP of three, and (3) a data entry secretary, DOT 203.582-054,[4] with a SVP of four. *Id.* at 193–94. The ALJ asked the VE about the vocational adjustment that would be required for these three jobs, including work processes, work setting, and work industry. *Id.* at 194. The VE answered that Plaintiff would require very little adjustment into these positions. *Id.*

The ALJ asked the VE to consider a second hypothetical individual with the same limitations as the first hypothetical individual. *Id.* However, the ALJ asked the VE to also consider that this second hypothetical individual could frequently handle, reach, feel, and finger bilaterally. *Id.* The ALJ then asked whether this second hypothetical individual could still perform Plaintiff's past work as a compliance manager. *Id.* at 194–95. The VE answered affirmatively, stating that such position would be available. *Id.* at 195. The ALJ also asked whether this second hypothetical

---

[4] Although the ALJ hearing transcript lists the data entry secretary as DOT 209.582-054, the correct DOT listing appears to be DOT 203.582-054, which includes data entry clerk.

individual would also be able to work as a receptionist, telephone representative, and a data entry secretary. *Id.* The VE answered that such individual would be able to work as a receptionist or telephone representative, but not as a data entry secretary because such a position requires "constant" fingering. *Id.*

The ALJ then asked the VE to consider a third hypothetical individual with the same limitations as the second hypothetical individual. *Id.* However, the ALJ asked the VE to also consider that this third hypothetical individual is required to use a cane for "uneven terrain or prolonged ambulation." *Id.* The ALJ then asked whether this third hypothetical individual would still be able to perform Plaintiff's past work. *Id.* The VE answered affirmatively, stating that the positions of compliance manager, receptionist, and telephone representative would still be available to such an individual because they are sedentary positions. *Id.* at 195–96. The ALJ then asked the VE to consider a fourth hypothetical individual, similar to the third hypothetical, except that this fourth hypothetical is required to use a walker instead of a cane. *Id.* at 196. The VE answered that such an individual would still be able to work as a compliance manager, a receptionist, or a telephone representative because "the positions are seated." *Id.*

The ALJ then asked the VE to consider whether that fourth hypothetical individual would also be able to perform the same positions if such an individual could only "occasionally" handle and finger. *Id.* The VE answered that such a limitation would preclude the individual from working as a telephone representative because such a position requires "frequent" fingering. *Id.*

Finally, the ALJ asked the VE whether any of the relevant jobs identified would be eliminated if an individual is consistently off task or unavailable for work fifteen percent or more of the day; had to come in late multiple days a week due to symptoms; had to leave early due to symptoms; and/or had to take longer breaks than usual due to symptoms. *Id.* at 196–97. The VE

answered that such an individual would be precluded from holding any of the jobs identified.  *Id.* at 197.  The ALJ also asked whether an individual who would have to be absent two or more days in a typical month would also be precluded from work.  *Id.*  The VE answered that such an individual would be unable to maintain full-time employment.  *Id.*

The ALJ asked Plaintiff whether she had any questions about the VE's testimony.  *Id.* Plaintiff answered that she did not "understand half of that stuff."  *Id.*  The ALJ then briefly summarized the questioning that took place with the VE.  *Id.* at 198.  The ALJ informed Plaintiff that she will be considering the medical records and everything Ms. Mancini and Plaintiff testified to before the ALJ makes her final decision.  *Id.*  The ALJ asked Plaintiff whether there was any other information that Plaintiff wanted to testify to that was not already discussed.  *Id.*  In response, Plaintiff asked the ALJ whether the medical records included information about the disc in her back.  *Id.*  The ALJ stated that such evidence was included in the medical records and considered. *Id.*  Finally, the ALJ asked Plaintiff, once again, whether there was anything else she would like to mention to the ALJ about her condition.  *Id.*  Plaintiff stated, "[n]o, that's it."  *Id.* at 199.

### B.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).  Plaintiff bears the burden of proving that he is disabled, and

he is responsible for producing evidence to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

The ALJ is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled. *See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). At step one, the ALJ must determine whether the claimant is currently unemployed; at step two, the ALJ must determine whether the claimant suffers from "severe"[5] impairment(s); at step three, the ALJ must determine whether the claimant suffers from an impairment that meets, or medically equals, a listed impairment found under 20 C.F.R. pt. 404, subpt. P, app. 1; at step four, the ALJ must determine whether the claimant is unable to return to his past relevant work given his Residual Functional Capacity ("RFC");[6] and if not, at step five, the ALJ must determine whether the claimant is unable to perform other work as it exists in the national economy, given his age, education, RFC, and work experience. *Id.* While "[a]n affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability . . . [a] negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (citing 20 C.F.R. § 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985)).

---

[5] An impairment is considered "severe" if it significantly limits a person's physical or mental ability to do basic work activities for a continuous period of at least twelve months. 20 C.F.R. §§ 404.1509, 404.1520a(d)(1), 404.1522(a)–(b).

[6] RFC is defined as the "most [a claimant] can still do despite [a claimant's physical and mental] limitations." 20 C.F.R § 416.945(a).

### C.  The ALJ's Decision

On October 31, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from March 3, 2016.  R. at 152–53.  In reaching her decision, the ALJ applied the five-step sequential evaluation process that must be used when considering these types of claims.  *Id.* at 142–52; *see* 20 C.F.R. § 416.920(a); *see also Frame*, 596 Fed. App'x at 910.  At step one, the ALJ determined that Plaintiff had not engaged in substantial activity since March 3, 2016, the alleged onset date.  *Id.* at 144.

At step two, the ALJ determined that Plaintiff suffers from seven "severe" impairments: (1) degenerative disc disease; (2) right bundle branch block; (3) hypertension; (4) fibroids; (5) right carpal tunnel syndrome; (6) arthritis of the knees and right hip; and (7) obesity.  *Id.*  The ALJ found that these medically determinable impairments significantly limit Plaintiff's ability to perform basic work activities.  *Id.*

At step three, the ALJ considered the listing requirements and determined that Plaintiff did not meet or medically equal the severity of any of the relevant listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1.[7]  *Id.*  Next, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform "sedentary work," as defined in 20 C.F.R. § 404.1567(a)[8], and could

---

[7] The Listing of Impairments is a predetermined set of major body system impairments that are considered severe enough to prevent an individual from engaging in any gainful activity, thereby rendering an individual who meets a listed impairment disabled. Such an individual will be considered disabled regardless of age, education, and work experience.  An individual's impairment is medically equivalent to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment.  *See* 20 C.F.R. §§ 416.925; 416.920(d); 416.926.

[8] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R.  § 404.1567(a).

occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally stoop and crouch, but could never kneel or crawl; can frequently balance, reach, handle, finger, and feel bilaterally; can occasionally utilize foot controls with the right foot; can never be exposed to hazardous machinery or mechanical parts, unprotected heights, extreme cold or heat, vibration, wetness, or humidity; and is limited to jobs that can be performed using a rolling walker required for uneven terrain or prolonged ambulation at all times when standing.  *Id.*

At step four, the ALJ accepted the testimony of the VE and determined that Plaintiff could perform her past relevant work as a compliance manager as generally performed.  *Id.* at 150.  The ALJ explained that Plaintiff's past relevant work as a compliance manager does not require the performance of work-related activities precluded by Plaintiff's RFC.  *Id.*

Although the ALJ determined that Plaintiff could perform her past relevant work at step four, the ALJ nevertheless decided to continue to step five.  *Id.* at 151.  At step five, the ALJ determined that Plaintiff could perform other jobs in the national economy, including: (1) a receptionist, DOT 237.367-038, at a sedentary level, and (2) a telephone receptionist, DOT 299.357-014, at the sedentary level.  *Id.* at 152.  Finding that Plaintiff could perform her past relevant work as a compliance manager and was also capable of performing other jobs in the national economy, the ALJ concluded the five-step sequential analysis and found that Plaintiff has not been under disability from March 3, 2016, through the date of the ALJ's decision.  *Id.*

## II.   STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied.  *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  "Substantial evidence is more than a scintilla, but less than a

preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

In reviewing the ALJ's decision, a court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and the Court must defer to the ALJ's decision.  *See Crawford v. Comm'r, Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Comm'r, Soc. Sec. Admin.*, 808 F.3d 818, 822 (11th Cir. 2015).  Even if the Court finds that the evidence preponderates against Commissioner's decision, the Court must affirm Commissioner's decision if the decision is supported by substantial evidence.  *See Ellison*, 355 F.3d at 1275.  In this respect, "the ALJ has a basic obligation to develop a full and fair record," given that a hearing before an ALJ is not an adversarial proceeding.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied.  *Id.*  However, no presumption of validity attaches to the ALJ's conclusions of law.  *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III.   ANALYSIS

Plaintiff argues that the ALJ committed three errors and that the Appeals Council erred in reviewing the additional evidence that was submitted to them by Plaintiff.  ECF No. [18] at 11.  First, Plaintiff argues that the ALJ's failure to provide Plaintiff with an opportunity to cross-examine the VE was a violation of due process.  *Id.* at 11–12.  Second, Plaintiff argues that the Appeals Council abused its discretion in failing to find that Plaintiff's additional evidence was "new and material."  *Id.* at 12–14.  Third, Plaintiff argues that the ALJ's RFC finding was not

supported by substantial evidence. *Id.* at 14–16. Finally, Plaintiff argues that the ALJ did not properly assess Claimant's alleged symptoms and limitations. *Id.* at 16–18.

Defendant responds that the ALJ did not violate Plaintiffs' due process rights, that the Appeals Council properly denied Plaintiff's request for review and the ALJ's decision was supported by substantial evidence. ECF No. [19] at 4–17. First, Defendant argues that not only did the ALJ satisfy her duty to develop the record, Plaintiff failed to show how she was prejudiced as a result of not questioning the VE. *Id.* at 4–6. Second, Defendant argues that Plaintiff failed to show that there was a reasonable probability that the evidence submitted to the Appeals Council would have changed the outcome of the decision. *Id.* at 6–11. Third, Defendant argues that the ALJ's RFC determination is supported by substantial evidence. *Id.* at 11–13. Fourth, Defendant argues that the ALJ properly considered and evaluated Plaintiff's subjective symptoms and limitations. *Id.* at 13–17.

### A. The ALJ Fully And Fairly Developed The Record.

Plaintiff contends that the ALJ failed to provide Plaintiff with the opportunity to cross-examine the VE. ECF No. [18] at 11–12. Plaintiff argues that the ALJ's failure amounted to a violation of Plaintiff's due process. *Id.* at 12. Defendant argues that the ALJ did provide Plaintiff the opportunity to cross-examine the VE. ECF No. [19] at 4–6. Moreover, even if the ALJ failed to provide Plaintiff with that opportunity, Plaintiff failed to show that she was prejudiced by not questioning the VE or in the ALJ's development of the record. *Id.* at 6.

Although Plaintiff correctly notes that 20 C.F.R. § 404.950(e) requires that an ALJ provide the parties with the chance to question the VE, Plaintiff's argument fails for two reasons. First, upon review of the record, the undersigned finds that the ALJ did provide Plaintiff with the opportunity to cross-examine the VE. Indeed, the ALJ informed Plaintiff of her ability to question

the VE at the very onset of the hearing. R. at 167. Specifically, after the ALJ finished explaining the VE's role in the proceeding, the ALJ informed Plaintiff that if she had any questions, she should "hang on to them until after" and if "it's better for [the VE] to answer them, then we will certainly ask [the VE]." *Id.* Moreover, once the ALJ finished questioning the VE, the ALJ, once again, informed Plaintiff of her right to question the VE. *Id.* at 197. Specifically, the ALJ asked Plaintiff whether "[she had] any questions about anything that [the VE] testified to [at the hearing]." *Id.*

Second, Plaintiff has failed to show that she was prejudiced by the failure to question the VE. "'[T]here must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the Secretary for further development of the record.'" *Newberger v. Comm'r of Soc. Sec. Admin.*, 293 Fed. App'x. 710, 712–13 (11th Cir. 2008) (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)). Indeed, "'[p]rejudice at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision.'" *Id.* at 713 (quoting *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)). As such, this Court's decision is guided by whether there are any "'evidentiary gaps'" which result in unfairness or clear prejudice to Plaintiff. *Id.* (quoting *Graham*, 129 F.3d at 1423).

Here, Plaintiff argues that the ALJ's failure to inform Plaintiff of her right to cross-examine the VE violated her due process rights. ECF No. [18] at 11. Specifically, she contends that she was prejudiced because the ALJ did not develop the record to include her mental impairment of depression or her chronic pain. ECF No. [21] at 3–4. Plaintiff's argument is unpersuasive.

At the time of the ALJ Hearing, there was nothing in the record regarding her depression. Indeed, evidence of depression was first documented on September 14, 2018 by Dr. Riveron, who diagnosed Plaintiff with adjustment disorder with depressed mood.  R. at 118.  This was included as part of the additional evidence to the Appeals Council and was not before the ALJ at the time of her decision.  Id. at 7.  Moreover, Plaintiff's contention that the ALJ did not consider Plaintiff's chronic pain is also incorrect, as the ALJ specifically considered Plaintiff's degenerative disc condition, knee pain, arthritis, and lumbar issues.  Id. at 198.   Notwithstanding that those issues were either not in the record or were considered, it is unclear how any questioning of the VE would have advanced either issue.  Instead, the record reflects that the ALJ asked Plaintiff about her conditions and symptoms that precluded her from working, id. at 176; the ALJ questioned Plaintiff about her multiple conditions and symptoms and her need for different types of medications to control them, id. at 180–81; the ALJ questioned Plaintiff about her abilities to do routine things such as standing, sitting, walking, crouching, kneeling, and household chores, id. at 185–88; the ALJ questioned Plaintiff about her need for a cane and/or a walker to move around, id. at 183–85; and the ALJ, at the end of the hearing, discussed the medical information that the ALJ was provided, and asked Plaintiff whether there was any additional evidence that Plaintiff would like to provide, id. at 198.  Clearly, the ALJ satisfied her duty to fully and fairly develop the record, and Plaintiff has failed to establish otherwise.[9]

---

[9] Although not at issue, it should be noted that Plaintiff also waived her statutory right to counsel at the ALJ hearing.  R. at 163–64.  The Eleventh Circuit has recognized that a Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ.  *See Coven v. Comm'r of Soc. Sec.*, 384 Fed. App'x. 949, 950 (11th Cir. 2010). The Commissioner of Social Security is required to "notify each claimant in writing, . . . of the options for obtaining [attorney representation] in presenting their cases before the Commissioner of Social Security . . . [and] of the availability to qualifying claimants of legal services organizations which provide legal services free of charge."  42 U.S.C. § 406(c).  Here, at the very onset of the hearing, the ALJ specifically informed Plaintiff of her right to counsel, the benefits of

**B. The Appeals Council Properly Decided To Deny Plaintiff's Request For Review.**

Plaintiff also argues that the Appeals Council abused its discretion in finding that the additional evidence provided by Plaintiff on appeal was not "new and material." ECF No. [18] at 12. Specifically, Plaintiff contends that she submitted "new and material" evidence to the Appeals Council that the ALJ did not consider, "but which further substantiates and documents the severity of the claimant's physical and mental impairments and is contrary to the weight of the ALJ's actions, findings, and conclusions." *Id.* Defendant argues that the Appeals Council properly determined that the evidence submitted by Plaintiff did not have a reasonable probability of changing the outcome of the ALJ's decision. ECF No. [19] at 6–11.

The Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Moreover, "[i]n cases reviewing final agency decisions on Social Security benefits, the exclusive methods by which district courts may remand to the Secretary are set forth in sentence four and sentence six of § 405(g)." *Archer v. Comm'r of Soc. Sec.*, 176 Fed. App'x. 80, 82 (11th Cir. 2006) (citing *Shalala v. Schaefer*, 509 U.S. 292, 296 (1993)). Indeed, this Court may remand if Plaintiff shows that: "(1) there is new, noncumulative evidence; (2) the evidence is material, that is, relevant and probative so there is a reasonable probability that it would change

---

having counsel present, the costs associated with obtaining representation, and the legal services organizations that may offer free representation to Plaintiff. R. at 163. Upon informing Plaintiff of her rights, the ALJ provided Plaintiff with the opportunity to postpone the hearing in the event that Plaintiff decided to seek representation. *Id.* However, Plaintiff decided to proceed with the hearing. *Id.* at 164.

the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." *Id.* (internal quotations omitted); *see* 42 U.S.C. § 405(g).

Here, Plaintiff argues that she submitted evidence to the Appeals Council that is contrary to the weight of the ALJ's actions, findings, and conclusions. ECF No. [18] at 12. Specifically, Plaintiff argues that she submitted: (1) an August 15, 2018 MRI of Plaintiff's lumbar spine, R. at 134–35; (2) Dr. Carrasco's September 7, 2018 treatment notes documenting Plaintiff's paresthesia of the skin, pain, and insomnia, *id.* at 76–79; (3) Dr. Riveron's September 14, 2018 psychiatric evaluation, *id.* at 118–20; and (4) Plaintiff's October 2018 primary care follow-up treatment notes documenting Plaintiff's pain and high blood pressure, *id.* at 125–29. ECF No. [18] at 12–13.

Upon review of the additional evidence, the Court finds it was cumulative and not material, and that there is no reasonable probability that such evidence would change the outcome of the ALJ's decision. *See Archer*, 176 Fed. App'x. at 82. First, the August 2018 MRI documented Plaintiff's "disc desiccation at the L4-L5 level and the lower thoracic spine" and the "presence of facet hypertrophy with impingement of both L4 nerve root . . . and the right L5 nerve root." R. at 134. This evidence is almost identical to the December 2017 MRI exam which the ALJ did considered. *See id.* at 147. Indeed, the December 2017 MRI exam documents that Plaintiff's "[d]isc desiccation is demonstrated at the slightly narrow L4-L5 level" and "[f]acet hypertrophy is present with encroachment of the left L4 and the left L5 nerve root at the corresponding foramina." *Id.* at 630.

Second, Dr. Carrasco's September 7, 2018 treatment notes are not material for the same reasons. Specifically, Dr. Carrasco's September 7, 2018 treatment notes document mostly normal exam findings, including normal findings for Plaintiff's head and neck, mental status, and musculoskeletal system. *Id.* at 76–77. Moreover, as Plaintiff points out, the treatment notes also

document Plaintiff's numbness/tingling, paresthesia, and Plaintiff's symptoms of neck pain, occipital headaches, and insomnia. *Id.* at 78. However, as Defendant correctly notes, Dr. Carrasco provided treatment notes on February 17, 2017 that document the very same conditions, including Plaintiff's paresthesia, right hand numbness, neck pain, occipital headaches, and insomnia. *Id.* at 754, 762. Indeed, the fact that the ALJ already considered Dr. Carrasco's February 2017 treatment notes, *id.* at 146, 753–63, which documents the same findings as Dr. Carrasco's 2018 treatment notes, *id.* at 76, show that it is not noncumulative evidence or relevant such that there is a reasonable probability that it would change the administrative result.

Third, Plaintiff's September 14, 2018 psychiatric evaluation by Dr. Riveron also fails to show a reasonable probability of changing the ALJ's decision. During Plaintiff's psychiatric evaluation, Dr. Riveron documented that Plaintiff felt "[a] little depression," was "sad," and ultimately diagnosed Plaintiff with "adjustment disorder with depressed mood." *Id.* at 118–19. Plaintiff argues that if "the ALJ properly developed the record, which necessarily included obtaining testimony from the claimant about her depression" there would be "ample evidence" to show that Plaintiff's psychiatric evaluation would have a reasonable probability of changing the ALJ's decision. ECF No. [21] at 7.

As an initial matter, Plaintiff's contention convolutes two different argument—one of which this Court has already addressed above as the Court has already found that the ALJ did not fail to fully and fairly develop the record. The issue here is whether Dr. Riveron's evaluation, which provides new evidence regarding Plaintiff's mental status, is material. The undersigned finds that it is not.

Dr. Riveron's evaluation notes that Plaintiff felt "sad" and, thereafter, diagnosed her with a depressed mood. R. at 119. Other than Plaintiff's claim that she "thinks" she is "a little

depressed," Dr. Riveron's evaluation does not provide any other reason or explanation for his findings. *Id.* at 118. Indeed, Dr. Riveron documented that Plaintiff had no unusual psychomotor changes, was cooperative, alert, and oriented times three. *Id.* at 119. Moreover, there were no other notations with respect to depression, nor was there any reference or assessment that depression presented any kind of limitation or impairment. As such, Dr. Riveron's evaluation does not show that Plaintiff's depression would offer any greater limitations than those already provided by the ALJ. Indeed, as noted by Defendant, the evaluation does not suggest it is a severe impairment, nor does it rise to the level of a medically determinable impairment. Moreover, even assuming that Dr. Riveron's evaluation did show that Plaintiff's depressed mood was a medically determinable impairment, Plaintiff's argument here would still fail because there is no indication that her depressed mood limited her ability to do basic work activities such as those provided by the ALJ, and, therefore, there is no reasonable probability that such impairment would change the outcome of the ALJ's decision.

Finally, as it pertains to Plaintiff's October 2018 treatment notes, *id.* at 125–29, the undersigned finds such evidence cumulative. The treatment notes document Plaintiff's back pain, right arm pain, and hypertension. *Id.* at 125, 127. However, as the record reflects, the ALJ's decision specifically considered these conditions. For instance, the ALJ considered Dr. Cardoso's 2017 treatment notes documenting Plaintiff's chronic lower back pain and knee pain, *id.* at 147, 655, 660, 675, 679, 689, 988; Dr. Chan's treatment notes documenting Plaintiff's hypertension. *id.* at 146, 435; and Dr. Carrasco's 2017 treatment notes documenting Plaintiff's right-hand numbness and tingling, *id*. at 146, 754. As such, Plaintiff's October 2018 treatment notes are clearly cumulative, as all of those conditions had already been considered by the ALJ. Moreover, even if the Court were to find that such evidence was not entirely cumulative, the evidence would

surely not present any reasonable probability of changing the outcome of the ALJ's decision. In short, the Court finds remand is inappropriate because the additional evidence submitted by Plaintiff was cumulative, not material, and, therefore, there is no reasonable probability that such evidence would have changed the ALJ's decision. *See Archer*, 176 Fed. App'x. at 82.

### C.  The ALJ's RFC Finding Is Supported By Substantial Evidence.

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence because the ALJ's RFC assessment did not consider Plaintiff's chronic pain or depression. ECF No. [18] at 14.  Plaintiff further argues that the ALJ failed to incorporate the findings derived from the Psychiatric Review Technique ("PRT"). *Id.* at 14–15.  Defendant argues that the ALJ's RFC assessment was supported by substantial evidence because: (1) the ALJ properly considered Plaintiff's allegations of pain; and (2) Plaintiff failed to raise her depression as a basis for disability and failed to show her depression was a mental impairment. ECF No. [19] at 11–13.

As to the argument that the ALJ did not consider her chronic pain, the only medical evidence of chronic pain that Plaintiff cites to is Dr. Chan's medical notes, which document Plaintiff's chronic lower back pain and chronic knee pain. R. at 146, 433–37. The ALJ specifically mentions Plaintiff's bilateral knee pain; Plaintiff's lower back pain; and Dr. Chan's assessment of Plaintiff's herniation of her intervertebral disc in the lumbar spine, Plaintiff's osteoarthritis of both knees, and Plaintiff's essential hypertension. *Id.* at 146.  Moreover, the ALJ also states in her decision that "[Plaintiff] alleged disabling difficulties standing, walking, and lifting due to pain . . . and [t]he record documents [Plaintiff's] degenerative disc disease of the cervical and lumber spine, osteoarthritis of the knees and right hip . . . and fibroids." *Id.* at 149.  The ALJ found that "[Plaintiff's] allegations of disabling pain . . . are inconsistent with the conservative treatment received . . . ." *Id.*  The ALJ's finding was, in part, based on the fact that despite Plaintiff's

osteoarthritis or degenerative disc disease, the medical records did not recommend any corrective surgery. *Id.* Moreover, the ALJ's RFC assessment, limiting Plaintiff to sedentary jobs that can be performed using a rolling walker for uneven terrain, prolonged ambulation, and at all times when standing, further demonstrates that the ALJ considered Plaintiff's pain in her knees and lower back. *Id.* at 144. As such, Plaintiff's argument that the ALJ did not consider Plaintiff's chronic pain is simply unsupported by the record.

Likewise, the argument that the ALJ did not properly consider Plaintiff's depression is unpersuasive. Defendant's reliance on *Street v. Barnhart*, 133 Fed. App'x. 621 (11th Cir. 2005) is on point. In *Street*, the claimant argued that the ALJ's decision was not supported by substantial evidence because the ALJ did not consider the claimant's "presently alleged psychological, mental, or intellectual impairments." *Id.* at 630. Specifically, the claimant argued that the ALJ should have been put on notice of the claimant's mental impairment based on the claimant's testimony that "he can't stand in crowds and doesn't attend sporting events . . . ." *Id.* However, the court rejected the claimant's argument, finding that the claimant's testimony did not give rise to an inference of a mental impairment, and the ALJ did not improperly ignore the claimant's alleged mental impairments because the claimant failed to list his mental impairments in his application and during the hearing. *Id.*

Here, Plaintiff did not complain of, nor allude to, any depressive symptoms to the ALJ during the hearing. Indeed, when the ALJ asked Plaintiff to provide the ALJ with the reasons for Plaintiff's alleged disability, Plaintiff merely described physical impairments and pain. R. at 178–81. During the end of the hearing, the ALJ provided Plaintiff with a second opportunity to address any other conditions that Plaintiff felt were relevant to her disability claim, yet Plaintiff still made no mention of depression. *Id.* at 197–98. As such, the undersigned finds that the ALJ did not

consider Plaintiff's alleged depression because Plaintiff failed to cite anything other than her physical condition as the basis for her disability in her application and in her testimony at the hearing.  Clearly, there was nothing in the record that would give rise to an inference that Plaintiff had any kind of mental impairment.  Indeed, even the additional evidence Plaintiff submitted to the Appeals Council provided little basis for her claim.  As Defendant correctly points out, the additional evidence documents that Plaintiff was merely feeling "a little depressed" because she had lost her house, yet she was not prescribed medication, did not have low self-esteem, and was able to live a normal life.  *Id*. at 118, 120, 128.

Next, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not incorporate the PRT into his decision.  ECF No. [18] at 14–15.  Where a claimant has presented a colorable claim of mental impairment, the ALJ must complete a PRT and append it to the decision or incorporate its mode of analysis into her findings and conclusions. *Moore v. Barnhart*, 405 F.3d 1208, 1213–14 (11th Cir. 2005).  The PRT requires rating the degree of a claimant's functional limitations in four broad areas: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."   20 C.F.R.  §  404.1520a(c)(3).   A colorable claim triggering a PRT is one that "presupposes that there is some possible validity to a claim."  *Richardson v. United States*, 468 U.S. 317, 326 n.6 (1984).  A colorable claim can also be inferred from the ALJ's discussion and analysis of evidence of a mental impairment.  *Mills v. Comm'r of Soc. Sec.*, 659 Fed. App'x 541, 542–43 (11th Cir. 2016).  Failure to complete the PRT requires remand.  *Moore*, 405 F.3d at 1214.

The Court notes that the burden is on Plaintiff to present a colorable claim of mental impairment in order to require the ALJ to incorporate the PRT in her decision.  *See Ellison*, 355 F.3d at 1276 (stating that although the ALJ has a basic duty to develop a full and fair record,

pursuant to 20 C.F.R. §416.912 (d), the burden is on the claimant to produce evidence to prove she is disabled). However, as noted above, Plaintiff offers no evidence of a colorable claim of mental impairment, and Plaintiff's own testimony fails to set out a colorable claim as to any mental impairments. *See* R. at 178–81, 197–98. As discussed above, when the ALJ asked what medical conditions were preventing Plaintiff from working, Plaintiff mentioned only physical conditions, and failed to mention, or even allude to, any mental impairments that she suffered from. *Id.* There was no testimony regarding her depression, and there was no other evidence to indicate as much. Indeed, none of Plaintiff's medications were for—or related to—depression.

For the reasons noted above, the undersigned finds that the ALJ's RFC assessment is supported by substantial evidence. The ALJ properly considered Plaintiff's chronic pain; and Plaintiff failed to establish a colorable claim of mental impairment. As such, there is no error that warrants remand.

### D. The ALJ Properly Considered Plaintiff's Alleged Symptoms And Limitations.

Plaintiff argues that "the ALJ failed to adhere to the Regulations in assessing [Plaintiff's] allegations of pain." ECF No. [18] at 16. Specifically, Plaintiff argues that her symptoms and limitations have been "remarkably consistent" with the medical evidence, and the ALJ failed to properly assess them. *Id.* at 18, 20. Defendant argues that the ALJ properly considered Plaintiff's alleged symptoms, and substantial evidence supports the ALJ's determination that Plaintiff's statements regarding the intensity, persistence, and functionally limiting effects of her alleged symptoms were not entirely consistent with the evidence of record. ECF No. [19] at 13–17.

When considering a claimant's symptoms, the ALJ must follow a two-step process: "[s]tep one is to determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms." *Contreras-Zambrano v. Soc. Sec.*

*Admin., Comm'r*, 724 Fed. Appx. 700, 703 (11th Cir. 2018).  "Step two is to evaluate the intensity

and persistence of an individual's symptoms, such as pain, and determine the extent to which an

individual's symptoms limit [her] ability to perform work-related activities."  *Id.* at 703–04.  An

ALJ considers whether "there are any inconsistencies in the evidence and the extent to which there

are any conflicts between [the individual's] statements and the rest of the evidence, including [her]

history, the signs and laboratory findings, and statements by [her] medical sources or other persons

about how [her] symptoms affect [her]."  20 C.F.R. § 404.1529(c)(4).

> Moreover, the Eleventh Circuit "has established a three-part 'pain standard' that applies

when a claimant attempts to establish disability through his or her own testimony of pain or other

subjective symptoms."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically, the

Eleventh Circuit's standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical
> evidence that confirms the severity of the alleged pain arising from that condition
> or (3) that the objectively determined medical condition is of such a severity that it
> can be reasonably expected to give rise to the alleged pain.

*Id.*; *see Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).  If a claimant established the

existence of an underlying medical condition and that it could reasonably be expected to produce

the alleged symptoms, but the objective medical evidence does not confirm the severity of those

symptoms, the ALJ must evaluate their intensity, persistence, and effect on the claimant's ability

to work.  *See Kunce v. Berryhill*, No. 16-23972-CIV-O'SULLIVAN, 2017 WL 3723792, at *15

(S.D. Fla. Aug. 24, 2017); *see also* 42 U.S.C. § 423(d)(5)(A), 20 C.F.R. §§ 404.1529(c), (d).

> Here, the undersigned finds that the ALJ properly evaluated Plaintiff's subjective

complaints.  As a preliminary matter, Plaintiff offers no support for her contention that the ALJ

improperly evaluated Plaintiff's subjective complaints.  Plaintiff's Motion merely provides the

process by which an ALJ is to evaluate a claimant's subjective complaints, references Plaintiff's

subjective testimony that was stated during the ALJ hearing, and summarily concludes—in one sentence—that the ALJ failed to properly assess Plaintiff's symptoms because "she wrongfully assessed the weight of the evidence of record . . . ."  ECF No. [18] at 16–20.  The Eleventh Circuit has held that "'an appellant abandons a claim when [she] either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.'"  *Phillips v. Comm'r, Soc. Sec. Admin*., 833 Fed. App'x 308, 322 (11th Cir. 2020) (alternations in original) (quoting *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).  Therefore, because Plaintiff has only raised this argument in a perfunctory manner the undersigned finds that she had abandoned it.

However, even if Plaintiff did not abandon her argument, the undersigned is still unpersuaded.  The record reflects that the ALJ considered Plaintiff's subjective complaints of pain.  Indeed, the ALJ considered numerous physical examinations, X-rays, and medical procedures that documented Plaintiff's impairments.  For instance, the ALJ considered: (1) X-ray exams revealing tricompartmental osteoarthritis with severe involvement of the patellofemoral compartment, R. at 148, 830–31, 834; (2) Dr. Cardoso's medical reports indicating that Plaintiff had chronic back pain and knee pain, *id.* at 147, 655, 660, 675, 679, 689, 988; and (3) Dr. Chan's assessment of Plaintiff's herniation of her intervertebral disc in the lumbar spine, osteoarthritis of both knees, and essential hypertension, *id.*  at 146, 435.  Based on these findings, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms.  *Id.* at 148.

Moreover, the ALJ noted that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence.  *Id.*  The ALJ specifically considered: (1) Plaintiff's preserved strength and sensation, *id.* at 149, 811;

(2) Dr. Linville's 2018 treatment notes documenting Plaintiff's normal gait without an assistive device, *id.* at 149, 643; (3) Dr. Carrasco's 2017 treatment notes documenting Plaintiff's normal strength, normal sensation, and normal deep tendon reflexes in her upper and lower extremities, *id.* at 149, 755–60; and (4) Dr. Adam's consultative examination, documenting Plaintiff's 5/5 grip strength and normal fine manipulation, *id.* at 149, 565.

Clearly, the ALJ properly assessed Plaintiff's subjective complaints in accordance with the Regulations and Eleventh Circuit precedent, and the undersigned finds that the ALJ's decision is supported by substantial evidence.  Indeed, in determining whether substantial evidence supports an ALJ's evaluation of a claimant's subjective statements, "[t]he question is not . . . whether [an] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."  *Werner v. Comm'r of Soc. Sec.*, 421 Fed. App'x 935, 939 (11th Cir. 2011).

## IV.     RECOMMENDATION

For the reasons stated above, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion, ECF No. [18], be **DENIED**, and Defendant's Motion, ECF No. [19], be **GRANTED**.

## V.     OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 2nd day of February, 2021.

_____
**JACQUELINE BECERRA**
**UNITED STATES MAGISTRATE JUDGE**